UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.

**14CR200S**

**Report
&
Recommendation**

LAWRENCE G. NEUBERT,

Defendant.

This matter is referred to the undersigned to hear and determine pretrial matters pursuant

to 28 U.S.C. § 636 (b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed

findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C.

§ 636(b)(1)(A) (text entry, Apr. 14, 2015).

The instant matter before the Court is the defendant's omnibus motion (Docket No. 15)

which seeks the following relief:  filing of a Bill of Particulars; identification of informants;

discovery; production of Brady materials; production of Federal Rules of Evidence 404(b), 608,

and 609; production of Jencks Act material; preservation of agents' rough notes; audibility

hearing; production of the Grand Jury transcripts.  These forms of relief (and the Government's

reciprocal motion for discovery, Docket No. 19, Gov't Response at 10-11) were considered in a

separate Order[1] (Docket No. 34).

---

[1]Defendant also moves for counsel participation in jury voir dire, voir dire of the
Government's experts, exclusion of testimonial hearsay, and production of Government
summaries (Docket No. 15); these forms of relief are addressed to the District Judge and will not

Considered here in this Report & Recommendation is defendant's motion to suppress statements and a <u>Huntley</u> hearing.

## BACKGROUND

Defendant was charged with conspiracy to possess with intent to distribute methamphetamines, in violation of 21 U.S.C. § 846; and two counts of possession with intent to distribute methamphetamines, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Docket No. 1).

*Defendant's Motion to Suppress*

Defendant initially moved to suppress a Report of Investigation which he claims contains his statements that were made either without being advised of his <u>Miranda</u> rights or not knowingly, voluntarily, or intelligently waiving his rights (Docket No. 15, Def. Motion at 19). The Government has filed responding papers (Docket No. 19, Gov't Response at 10-11). Defendant later submitted his affidavit in support of this motion (Docket No. 21).  There, defendant denies being advised of his <u>Miranda</u> rights and that he was questioned by United States Drug Enforcement Administration ("DEA") agent Smith (<u>id.</u> ¶¶ 5, 3, 6-8).  Oral argument was heard on September 14, 2015 (Docket No. 20) and a suppression hearing was held on September 22, 2015 (Docket Nos. 24 (minutes), 29 (transcript)).  Post-hearing briefing on the suppression motions was due by February 11, 2016 (Docket No. 31; <u>see</u> Docket No. 20 (post-hearing briefs due thirty days after filing of transcript).  The Government submitted its post-hearing brief (Docket No. 32), arguing that defendant was advised of his <u>Miranda</u> rights prior to making his statements to agent Valentine Zimniewicz, a detective in the Cheektowaga police department and member of the DEA taskforce (Docket No. 29, Tr. at 4).

be considered here, <u>see</u> Docket No. 34, Order of Mar. 1, 2016, at 1.

Agent Zimniewicz was the sole witness who testified at the hearing (Docket Nos. 24, 29; see also Docket No. 33, Def. Post-Hearing Memo. at 2, 3 (noting that defendant did not testify); cf. Docket No. 23, Gov't List of Potential Witnesses (listing agents Zimniewicz and Randy Fry as Government witnesses)).  He stated that he traveled to San Diego, California, on March 17, 2015, to arrest defendant on a warrant (Docket No. 29, Tr. at 4-5).  After showing a copy of the arrest warrant, placing defendant under arrest, and moving into a courtyard, Zimniewicz read to defendant from a Miranda rights card, with defendant acknowledging that he heard and understood those rights and continued to have a conversation with the agent (id. at 6-7, 23). Zimniewicz testifies that he began his conversation with defendant after advising him of his rights (id. at 7).  Zimniewicz asked if defendant consented to search of his premises and defendant agreed, signing a consent to search form (id. at 8, 25-26, Gov't Ex. 3).  Defendant then pointed out the location of a small amount of methamphetamine in the apartment (id. at 9). Afterwards, defendant stated that he thought he should speak with an attorney (id. at 9, 17, 26, 27).  At that point, Zimniewicz was unsure whether defendant was willing to continue that conversation or not (id. at 17) but he stopped interviewing defendant (id. at 9-10).  Zimniewicz claims that he did not continue questioning after defendant said that he thought he should speak to an attorney, giving defendant time to consider "what he wanted to do" (id. at 17-18, 21, 22). An attorney was not made available to defendant at his home (id. at 22) or at the DEA's office (id.).

Defendant then was taken to the DEA's office in San Diego, wherein he requested to speak with Zimniewicz and other case agents to cooperate and was interviewed (id. at 10). Zimniewicz, who did not transport or process the defendant (id. at 18; see id. at 19-20

(Zimniewicz did not know what transpired during transportation by agent Deal)), testified that defendant was given a written <u>Miranda</u> waiver form, which the agent read and defendant read for himself and initialed and signed (<u>id.</u> at 11, 12-13, Gov't Ex. 1).  Defendant stated (upon being advised that the conversation was being recorded) that he did not want that interview recorded (<u>id.</u>).  Defendant then described the distribution of methamphetamine and the others involved (<u>id.</u> at 14).   During cross-examination, Zimniewicz stated that the declination of recording form was signed by defendant before the <u>Miranda</u> waiver (<u>id.</u> at 16).  Both the Government and defendant rested following Zimniewicz's testimony (<u>id.</u> at 29), although there was no testimony from or about a DEA agent Smith and defendant did not testify at the hearing (<u>cf.</u> Docket No. 23).

Defendant, based upon his initial papers (Docket No. 21, Def. Aff. ¶¶ 3-11; <u>see</u> Docket No. 33, Def. Post-Hearing Memo. at 1-2, 4), contends that defendant was extremely upset and distraught during the arrest (<u>id.</u> at 1, 3; Docket No. 21, Def. Aff. ¶ 4).  He argues that DEA Agent Smith indicated to him that if the defendant cooperated, the charges might be reduced.  Defendant repeats that he did not recall being advised of his <u>Miranda</u> rights (Docket No. 33, Def. Post-Hearing Memo. at 1-2).  Agent Smith was not identified as a potential witness and did not testify; Agent Fry and defendant also did not testify (<u>id.</u> at 2).  Defendant contends that Agent Smith conducted an interrogation of him after he invoked his right to counsel by saying that he thought he needed an attorney (<u>id.</u> at 5).  Defendant argues that Zimniewicz's testimony was not corroborated by Agent Fry (<u>id.</u> at 2) and that Zimniewicz testified that he did not know what occurred during the two hours between his concluding questioning at defendant's home, during defendant's transport to DEA headquarters and until Zimniewicz was called in to question defendant at the DEA (<u>id.</u> at 3).  Defendant argues that his invocation of his right to counsel was

4

not treated as being equivocal by Zimniewicz (id. at 5).  Defendant contends that, despite

Zimniewicz's stopping his interrogation, Agent Smith continued and "thereby enticed Mr.

Neubert to contact Detective Zimniewicz because he felt he could help himself out without

realizing that any statements he gave would be used against him" (id. at 5-6).

## DISCUSSION

As noted by the Second Circuit in United States v. Gonzalez, 764 F.3d 159, 165-66 (2d

Cir. 2014) (some citations omitted), "statements obtained in violation of Miranda are of course

subject to a prophylactic rule of exclusion. … Once Miranda rights have been invoked,

interrogation must stop and the invocation must be 'scrupulously honored.'  Michigan v. Mosley,

423 U.S. 96, 104 (1975).  However, a waiver can occur subsequent to an initial invocation of

Miranda rights if the suspect reinitiates communication.  Edwards v. Arizona, 451 U.S. 477, 485

(1981);  . . . ."  The Government must prove, by a preponderance of evidence, that the waiver

was knowing, voluntary, and intelligent, Gonzalez, supra, 764 F.3d at 166.  Whether a waiver

occurred is viewed under the totality of circumstances, but the invocation of the Miranda rights

"must be 'unambiguous,'" id. (quoting Berghuis v. Thompkins, 560 U.S. 370, 381 (2010)) (other

citations omitted).

There are three different incidents of defendant's statements in this case, separated by his

invocation (in some manner) of his right to counsel during his arrest.  The first arises from the

arrest; while the second is the interview at DEA office in San Diego.  The third, where there was

no direct testimony during the hearing, was defendant's communication with DEA Agent Smith

between the statements made in the house and those made at DEA headquarters.

As for his arrest, defendant was advised of his <u>Miranda</u> rights before defendant signed the consent to search and later disclosed the location of methamphetamine.  Despite contending that he did not recall being advised of these rights, this Court finds that defendant knowingly, intelligently and voluntarily waived them by talking with officers afterwards.  He continued to talk with agents until he said that he thought he should talk with a lawyer.  Even his statement that maybe he should talk with an attorney is insufficient to constitute an unambiguous request for counsel, <u>see</u> <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994) (<u>see also</u> Docket No. 32, Gov't Post-Hearing Memo. at 4); <u>but cf.</u> <u>Wood v. Ercole</u>, 644 F.3d 83, 91-92 (2d Cir. 2011) ("I think I should get a lawyer" held to be unambiguous request for counsel); Gordon Mehler, John Gleeson & David C. James, <u>Federal Criminal Practice:  A Second Circuit Handbook</u> § 7-6, at 145 (15th ed. rev. 2015).  That statement was ambiguous and not an invocation of the right to counsel.  Out of prudence, however, agent Zimniewicz stopped questioning defendant after he made his statement questioning his need for counsel.  Thus, the statements defendant made from being advised of his <u>Miranda</u> rights to his mentioning counsel (including locating drugs for the agents) was knowing and voluntary.

Regarding defendant's DEA statements, these also were a knowing, intelligent waiver of his rights.  First, he requested to speak with agents, after effectively invoking his right not to speak to them without first having counsel present.  Where the suspect initiates further communication, the police may resume interrogation, <u>Gonzalez</u>, <u>supra</u>, 764 F.3d at 166; <u>see</u> <u>United States v. Montana</u>, 958 F.2d 516, 519 (2d Cir. 1992); Mehler, Gleeson & James, <u>Federal Criminal Practice</u>, <u>supra</u>, § 7-6, at 146.  Defendant (Docket No. 33, Def. Post-Hearing Memo. at 5) distinguishes <u>Gonzalez</u> from this case, contending that in <u>Gonzalez</u>, that defendant had

6

initiated the post-warning conversation with law enforcement and the court held that there was

no resumption of interrogation (id.), Gonzalez, supra, 764 F.3d 159, whereas here the defendant

did not initiate resumption of questioning (seeking to speak to Zimniewicz after being promised

leniency by Agent Smith).  But the record before this Court is that Zimniewicz was called back

to interview defendant at defendant's apparent request as conveyed by another agent, Shaun

Griffen (see Docket No. 33, Def. Memo. at 2-3).  Defendant then executed the written Miranda

waiver form (which, in part, advised him of his right to counsel) without reasserting the right to

counsel or waiting for counsel to be present.  He declined recording of his interview before he

initialed and signed the written Miranda waiver form, showing that he was conscious of what

was going on and was making knowing choices in the manner in which he talked with the agents.

 The third, intermediate instance has no testimony from the evidentiary hearing.  The

Government and defendant did not called Agent Smith as a witness and defendant did not testify

at the hearing.  Rather, defendant only relies upon his affidavit (Docket No. 21), which has not

been challenged by cross-examination, see United States v. Murray, No. 14CR6183, 2015 U.S.

Dist. LEXIS 162846, at *11-12 (W.D.N.Y. Dec. 4, 2015) (Wolford, J.) (citing cases, rejecting

defendant's affidavit and accepting hearing testimony to find that defendant's statements were

voluntary); see id. at *16 (affording more weight to investigator's testimony than to defendant's

affidavit).  Courts "give greater weight to [witness] testimony, which was subject to cross

examination, than to [sworn] affidavits," United States v. Robles, 253 F. Supp. 2d 544, 549 n.14

(S.D.N.Y. 2002) (quoting United States v. Gardner, 611 F.2d 770, 774 n.2 (9th Cir. 1980));

Murray, supra, 2015 U.S. Dist. LEXIS 162846, at *11, and may give defendant's affidavit

statements less weight than live testimony since the latter was subjected to cross-examination

and the person testifying could have his or her credibility assessed, United States v. Medina, 19 F. Supp. 2d 518, 535 n.13 (S.D.N.Y. 2014); United States v. Fiseku, No. 15 Cr. 384, 2015 U.S. Dist. LEXIS 162466, at *9-10 (S.D.N.Y. Dec. 3, 2015).  This Court cannot assess defendant's credibility from his sworn affidavit, see United States v. Juliano, No. 99 Cr. 1197, 2000 U.S. Dist. LEXIS 12149, at *8 n.1 (S.D.N.Y. Aug. 24, 2000) (court affording less weight to defense affidavit than live testimony).

Although defendant suggests that he may have been coerced during transport or processing into making statements outside the presence of his lawyer, there is no evidence of such coercion.  The only witness called, Zimniewicz, did not transport or process defendant and did not know what happened during either process.  From defendant's own affidavit (Docket No. 21, ¶¶ 11-12), defendant said that he was willing to assist Agent Smith and was willing to set up a meeting between Smith and others who possessed drugs, that he relied upon Agent Smith's representation in making his statements and admissions (id. ¶ 9).  The affidavit makes no mention of coercion during his transport to DEA headquarters.  Since we have no testimony from defendant or Smith, we do not know (a) how long it was between their conversation (if defendant is credited) and defendant's call for Zimniewicz; or (b) whether Smith somehow directed defendant to seek Zimniewicz based upon their conversation.

Defendant contends that he was "extremely upset and distraught" (e.g., Docket No. 21, Def. Aff. ¶ 4), although there was no testimony from the sole witness that defendant was distraught (Docket No. 29); cf. United States v. Filipowski, Criminal No. 2:07-cr-127, 2009 U.S. Dist. LEXIS 29388, at *9 (D. Vt. Apr. 3, 2009) (officers testified defendant was coherent and lucid during evening, video of exchanges with defendant and police showed him to be calm,

somber, not apparently distraught).  Accepting that defendant was overwrought at the time of the
arrest, he was conscious enough to sign two waivers of his rights and, while at DEA
headquarters, to insist that his statement not be recorded.  These do not suggest that he was
acting involuntarily due to his emotional state, see also McMillon v. Culley, 380 Fed. App'x 63,
67 n.3 (2d Cir. 2010) (denying habeas relief, finding that petitioner's confession was voluntary
despite contention that he was an eighteen year old distraught after his mother's death).  "Mere
illness or emotional stress, where not disabling, does not vitiate the questioning of a defendant,"
United States v. Tufaro, 593 F. Supp. 476, 493 (S.D.N.Y. 1983) (citing United States ex rel.
Ward v. Mancusi, 414 F.2d 87, 88-89 (2d Cir. 1969)).  Here, there was no evidence that
defendant was "too distraught," Tufaro, supra, 593 F. Supp. at 493, to make intelligent decisions.

Defendant's states in his affidavit that he was not aware of the impact of his statements,
that they would be used against him (id. ¶ 15).  Defendant has produced no other evidence of his
general intelligence or faculties.  To prove a valid waiver of his Miranda rights, "the government
must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the
defendant had a full awareness of the right being waived and of the consequences of waiving that
right.  Moran v. Burbine, 475 U.S. 412, 421 (1986)," United States v. Jaswal, 47 F.3d 539, 542
(2d Cir. 1995).  In Jaswal, the court considered the totality of the circumstances surrounding that
defendant's statement, including his physical condition when made and his command of the
English language, concluding that the defendant's waiver there was "knowingly and voluntarily
given," id.

Based on the totality of the circumstances in this case, Fare v. Michael C, 442 U.S. 707,
725 (1979), defendant here knowingly, intelligently and voluntarily waived his rights, in

particular, his right to have counsel present and the advice of counsel prior to making his statements (including locating for agents where drugs were). At DEA headquarters, defendant knowingly resumed questioning, signed the waiver form, and had the presence of mind to object to having his statements audio or visually recorded. As a result, defendant's motion to suppress those statements (Docket No. 15) should be **denied**.

## CONCLUSION

Based upon the above, it is recommended that so much of defendant's motion to suppress his statements (Docket No. 15) be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
March 2, 2016

11