UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

LAWRENCE G. NEUBERT,

               Defendant.

**DECISION AND ORDER**
14-CR-200S

## I. INTRODUCTION

Presently before this Court is Defendant Lawrence G. Neubert's Motion for Compassionate Release, which the government opposes.  See 18 U.S.C. § 3582 (c)(1)(A).  For the reasons discussed below, Neubert's motion is denied.

## II. BACKGROUND

On July 12, 2017, Neubert pleaded guilty to conspiring to possess with intent to distribute, and to distribute, 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846.  (Docket Nos. 51, 52.)  Approximately six months later, on January 31, 2018, this Court sentenced Neubert to 120 months' imprisonment, 5 years' supervised release, a $100 special assessment, with no fine, fees or costs.  (Docket Nos. 71, 72.) Neubert is presently serving his sentence at FCI Lompoc, with a release date of September 22, 2023.  (See Memorandum of Law, Docket No. 79, Exhibit A.)

On August 18, 2020, Neubert filed a pro se motion for compassionate release under 18 U.S.C. § 3582 (c)(1)(A)(i) on the basis that he is at heightened risk of severe illness from COVID-19 due to his medical conditions.  (Docket No. 76.)  The government filed its opposition on September 14, 2020.  (Docket No. 79.)  The Federal Public Defender then sought appointment as counsel, which this Court granted on October 2,

1

2020.  (Docket Nos. 80, 81.)  Neubert thereafter filed a counseled supplement to his motion and replied to the government's opposition on October 22, 2020.  (Docket No. 82.) The government filed a sur-reply together with Neubert's medical records on October 27 and 28, 2020, after which this Court took Neubert's motion under advisement without oral argument.  (Docket Nos. 83-86.)

## III. DISCUSSION

### A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[1] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing

---

[1] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute.  See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020).  A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i);  United States v. Perez, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020).  If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute.  See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory).  The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [2] or (2) 30 days lapse from the date the warden of the

---

[2] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf.  28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's

defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples.  The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i)   The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).   A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.   Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease

---

general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

and advanced dementia.

(ii)    The defendant is—

(I)    suffering from a serious physical or medical condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[3] Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision.  It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

(1) (A)   extraordinary and compelling reasons warrant the

---

[3] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A).  See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited January 25, 2021)). But this Program Statement does not constrain this Court's consideration of what qualifies as extraordinary and compelling reasons for compassionate release.  As the Second Circuit recently held, "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." United States v. Brooker, 976 F.3d 228, 234-37 (2d Cir. 2020); see also United States v. Marks, 455 F. Supp. 3d 17, 22-25 (W.D.N.Y. 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and

(3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction.  See Gileno, 448 F. Supp. 3d at 186.

**B.    Neubert's Motion for Compassionate Release**

**1.  Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory exhaustion requirement is mandatory and cannot be excused.  See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 454 F. Supp. 3d 217, 220-223 (W.D.N.Y. 2020); accord United States v. Montanez, 458

F. Supp. 3d 146, 149-160 (W.D.N.Y. 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Here, Neubert submitted his request for compassionate release to the warden of FCI Lompoc on June 18, 2020, but it appears that the warden took no action. (Motion for Compassionate Release, Docket No. 76, p. 4 and Exhibit 3.) Thirty days having lapsed since June 18, 2020, this Court finds that Neubert has satisfied the statutory exhaustion requirement, and the government concedes as much. (See Memorandum of Law, Docket No. 79, p. 4.)

### 2. Extraordinary and Compelling Reasons for Sentence Reduction

Neubert has served approximately 70 months of his 120-month sentence. He is nearly 50 years old and suffers from several documented medical conditions, including ████████████████████████████████████████████████,[4] all of which he argues makes him highly susceptible to severe illness from COVID-19. Neubert's recent medical records confirm these diagnoses. (See, e.g., 2020 Medical Records, Docket No. 86, p. 3 (listing conditions as ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████.) Those records also reveal that Neubert has already contracted and recovered from COVID-19, having tested positive in May 2020. (See, e.g. id. p. 85.) If released, Neubert plans to live with a friend in San Diego, California, with financial assistance from his mother. (Supplemental Memorandum and Reply, Docket No. 82, p. 24.)

The government concedes that Neubert's ████████████████████████████████

---

[4] Due to the sensitive nature of Neubert's medical conditions, this Court has sealed all filings associated with his motion at his request. A sealed, unredacted copy of this decision will also be filed for record purposes.

███████████ would constitute extraordinary and compelling reasons for a sentence reduction in the context of the present COVID-19 pandemic, and it does not dispute the existence of his other conditions.  (See Memorandum of Law, Docket No. 79, p. 4.)  That is, it concedes that Neubert would demonstrate extraordinary and compelling reasons for a sentence reduction under the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), because his medical conditions include those that may make one highly susceptible to severe illness from COVID-19.  See United States v. Resnick, 451 F. Supp. 3d 262, 270 (S.D.N.Y. 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).

Indeed, the Centers for Disease Control and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[5]  See Jones v. Wolf, 467 F. Supp. 3d 74, 87 (W.D.N.Y. 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality") (quoting Basank v. Decker, 449 F. Supp. 3d 205, 211 (S.D.N.Y. 2020)).  Those medical conditions consist of cancer, chronic kidney disease, chronic obstructive pulmonary disease (COPD), Down Syndrome, heart conditions (e.g., heart failure, coronary artery disease, cardiomyopathies), immunocompromised state from solid organ transplant, obesity (body mass index of 30-39), severe obesity (body mass index greater than 40), pregnancy, sickle cell disease, smoking, and Type 2

---

[5] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited January 25, 2021).

diabetes mellitus.[6]  The CDC has also identified medical conditions that *might* make an individual at increased risk for severe illness from COVID-19, including ███████████████████████████████████████████████████████.[7]

But here the government argues that Neubert ultimately fails to set forth extraordinary and compelling reasons for compassionate release because he has already contracted COVID-19 and recovered with no apparent complications.  Neubert, on the other hand, maintains that he suffers ongoing symptoms from COVID-19 and continues to face the danger of reinfection.  He also alleges that the medical care at FCI Lompoc is inadequate.

It is significant that Neubert has already contracted and recovered from COVID-19, since "the main point of releasing an individual is to decrease the person's chance of contracting COVID-19."  See United States v. Rodriguez, No. 19-CR-64, 2020 WL 4581741, at *2 (D. Conn. Aug. 10, 2020).  For this reason, many courts have determined that a positive diagnosis itself is not an extraordinary and compelling reason for release. See, e.g., United States v. Hawkins, 16-CR-189 (JMA), 2021 WL 40206, at *2 (E.D.N.Y. Jan. 5, 2021) (denying compassionate release to defendant who contracted a non-severe case of COVID-19); United States v. Lindsey, No. 13-CR-271-LTS, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (finding that "an inmate's having contracted COVID-19, standing alone, does not qualify as an 'extraordinary and compelling" circumstance warranting a reduction in sentence"); United States v. Hardy, No. 11-CR-629, 2020 WL

---

[6] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited January 25, 2021).

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited January 25, 2021).

7711676, at *2 (S.D.N.Y. Dec. 29, 2020) (finding that since the defendant "has contracted and seemingly weathered the disease, a sentence reduction based on the risk of contracting it no longer makes sense"); United States v. Delorbe-Luna, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release."); United States v. Williams, No. 11-CR-172, 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020) (collecting cases); United States v. Mateus, No. 14-CR-504, 2020 WL 5096062, at *4 (S.D.N.Y. Aug. 28, 2020) (finding that defendant who had contracted and recovered from COVID-19 did not demonstrate extraordinary and compelling reasons for release); United States v. Santiago, No. 92-CR-563 (BMC), 2020 WL 4926470, at *2 (E.D.N.Y. Aug. 21, 2020) ("I do not believe that a positive COVID-19 test, even in an individual with risk factors for severe complications or death, constitutes an extraordinary and compelling circumstance in and of itself."); United States v. Perez, No. 04 Cr. 937-1 (NRB), 2020 WL 4677586, at *1 (S.D.N.Y. Aug. 11, 2020) (finding that "contraction of a disease generally does not constitute an extraordinary and compelling basis for release . . . [t]he fact that defendant recovered from COVID-19 further supports this conclusion").

Rather, the issue posed by a defendant who contracts COVID-19 is whether he or she is being provided necessary and adequate medical treatment, see United States v. Otrosinka, 12-CR-300S, 2020 WL 5628060, at *5 n.9 (W.D.N.Y. Sept. 21, 2020); United States v. Martin, 15-CR-6132-FPG, 2020 WL 4361679, at *3 (W.D.N.Y. July 30, 2020); United States v. Zubkov, 460 F. Supp. 3d 450, 454 (S.D.N.Y. 2020); United States v. Russo, 454 F. Supp. 3d 270, 279 (S.D.N.Y. 2020), or is unable to provide self-care, see United States v. Adams, No. 10-CR-82 (RJS), 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4,

2020) (Sullivan, Circuit Judge).

Neubert argues that the medical care available at FCI Lompoc is inadequate to sufficiently protect his health.  He claims that since the time he tested positive, he has experienced ongoing symptoms and received insufficient medical treatment.  In particular, he claims to have received no medical care in the weeks following his positive test in May 2020 until July, when he was found to have an acute upper respiratory infection.  He also maintains that he continues to suffer shortness of breath and a sporadic cough.

According to his medical records, Neubert tested positive for COVID-19 on May 4, 2020, and was asymptomatic.  See 2020 Medical Records, pp. 13, 99.  He was then seen by a medical provider every day from May 8-19, 2020.  Id. pp. 68-69.  On each occasion, Neubert's temperature was within normal limits, and he denied having any COVID-19 symptoms, including cough, shortness of breath, muscle pain, fatigue, sore through, headache, loss of taste and smell, or chills.  Id.  After 14 days with no symptoms, Neubert was released from isolation.  Id. at p. 68.

On July 12, 2020, approximately two months after he tested positive, Neubert was seen in the Health Services unit for a chronic care appointment to review his plan of care. Id. at p. 6.  It was discovered at that time that Neubert had an acute upper respiratory infection for which he was prescribed and provided medication.  Id. at pp. 7, 79, 84, 89.

Given this documentation in the record, there is no merit to Neubert's claims that he experienced ongoing COVID-19 symptoms, was not treated for those symptoms after testing positive, or received insufficient medical care overall.  He further offers no support for his contention that he requested multiple "sick calls," nor is there any record of him suffering ongoing shortness of breath or a sporadic cough, neither of which would warrant

release in any event.

From this Court's review, Neubert's medical records demonstrate that he received regular and appropriate medical care from the time he was diagnosed with COVID-19 through the dates last documented in the record, including for what appears to be an unrelated upper respiratory infection given the passage of time between Neubert's asymptomatic bout with COVID-19 and the infection.  He has thus failed to show an extraordinary and compelling reason for release on this basis.[8]  See, e.g., Perez, 2020 WL 4677596, at *1 (denying release to defendant who was "stable" after contracting COVID-19 and who presented no credible evidence that his medical care was inadequate).

Neubert next argues that release is warranted because he faces an uncertain future as it relates to the long-term physical effects and potential disabilities that may stem from having had COVID-19.  It is, of course, too early to know the extent or severity of any such effects given the infancy of this virus.  With any such effects purely speculative at this time, they do not form a basis for release.  See Adams, 2020 WL 4505621, at *3 (finding the possibility of future "undetected adverse effects from COVID-19" to be "simply too speculative to warrant release").

Finally, Neubert argues that release is warranted because he faces a continuing risk of reinfection.   While some courts have granted release on this basis, see

---

[8] Neubert also argues that a report released by the U.S. Department of Justice Office of the Inspector General supports his claim that the medical care provided at FCI Lompoc is inadequate.  But since the release of that report in July 2020, FCI Lompoc has implemented sufficient corrective measures such that "[c]ourts now recognize that Lompoc prison . . . is now able to adequately respond, monitor, and care for its inmates in relation to COVID 19."   United States v. Hernandez, 1:17-CR-264 AWI SKO, 2020 WL 5203428, at *3 (E.D.Cal. Sept. 1, 2020).

Supplemental Memorandum and Reply, pp. 7-10 (collecting cases[9]), this Court again finds Neubert's grounds too speculative.  Like the possible long-term effects of the disease, too little is known about the risks of reinfection to grant the extraordinary relief of compassionate release on that ground.  See Adams, 2020 WL 4505621, at *4 (finding risk of reinfection to be "far too speculative a basis" for release); United States v. Davis, 12-Cr-712 (SHS), 2020 WL 3790562, at *3 (S.D.N.Y. July 7, 2020) (finding that possibility of reinfection in defendant recovered from COVID-19 is not an extraordinary and compelling reason for sentencing reduction); United States v. McBride, 17-CR-192G, 2020 WL 3496280, at *3 (W.D.N.Y. June 29, 2020) (finding that "unsupported speculation" that defendant could be reinfected does not warrant compassionate release); United States v. Decker, No. 17-cr-738 (LAK), 2020 WL 3268706, at *2 (S.D.N.Y. June 17, 2020) (finding possibility of reinfection fails as a ground for compassionate release).

Accordingly, for all of these reasons, this Court finds that Neubert has failed to show an extraordinary and compelling reason warranting a sentence reduction and release.

### 3.  Consideration of the § 3553 (a) Factors

Even if Neubert had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are outweighed by consideration of the § 3553 (a) factors, and that Neubert's original sentence would be severely undermined by a sentence reduction.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 432 F. Supp. 3d at 430-31.  The § 3553 (a) factors include, inter alia, the nature and

---

[9] None of the cases listed are from district courts in the Second Circuit.

circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553 (a).

Neubert is a career offender.  (Presentence Investigation Report, Docket No. 53, ¶ 33.)  Between August 2011 and October 2014, he conspired to possess and to distribute methamphetamine.  (Id. ¶ 8.)  Working with co-conspirators, Neubert routinely mailed packages containing methamphetamine from California to Buffalo, New York.  (Id. ¶¶ 9-11, 14-16.)  Co-conspirators also traveled to California to obtain a large quantity of methamphetamine directly from Neubert.  (Id. ¶ 16.)  Neubert's relevant conduct involved 449.2 grams of methamphetamine.  (Id. ¶ 18.)

Neubert faced a maximum of life imprisonment under the statute and a guideline imprisonment range of 262-327 months.  (Id. ¶¶ 59, 60.)  Despite this significant exposure, this Court imposed a non-guidelines sentence of 120 months, the statutory mandatory minimum punishment.  This was more than a fair, just, and reasonable sentence, and one that, in this Court's view, would be severely undermined by a reduction to time served. Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant.  See 18 U.S.C. § 3553 (a).  Such a reduction would also result in unwarranted sentencing disparities, particularly given Neubert's status as a career offender.  Id.  Accordingly, consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

14

### 4.  Consistency of a Reduction with U.S.S.G. § 1B1.13

Lastly, any sentence reduction must be consistent with U.S.S.G. § 1B1.13, which essentially means that this Court must determine whether Neubert is a danger to the safety of any person or to the community.  <u>See</u> 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2).

Neubert is a criminal history category VI, the highest in the federal system. (Presentence Investigation Report, ¶ 54.)  His criminal history consists of multiple misdemeanor and felony drug-related convictions, but he does not have a history of violence.  (<u>Id</u>. ¶¶ 43-51.)  Thus, other than his substantial involvement in the inherently dangerous controlled-substances business, there is no showing that Neubert poses a specific danger to any person or the community, if release was otherwise found to be warranted (which it is not).

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that compassionate release and a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted.  Neubert's motion will therefore be denied.

## V. ORDER

IT HEREBY IS ORDERED, that Neubert's Motion for Compassionate Release (Docket No. 76) is DENIED.

SO ORDERED.


Dated:          January 26, 2021
                Buffalo, New York

                                              s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge